IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| MAKHTESHIM AGAN OF NORTH AMERICA, INC. et al., | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: 8:18-cv-00961-PWG |
| NATIONAL MARINE FISHERIES SERVICE et al. | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This case arises out of a dispute between a group of pesticide manufacturers and the U.S. government. The plaintiff-manufacturers are challenging the latest developments in a long-running administrative process that has continued to frustrate their hopes of having the U.S. Environmental Protection Agency ("EPA") reregister the active ingredients in their products. While the litigation continues to run its course, a number of conservation and fishing organizations have come forward seeking to join the suit as intervenor-defendants. Mot. to Intervene, ECF No. 24. The issue now before the Court is whether to permit the intervention.

Where, as here, a would-be intervenor seeks to join a suit on the same side as the government, it "must mount a strong showing" that the government cannot adequately represent its interest. *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013). The conservation and fishing organizations seeking to intervene in this case have not met their burden. I conclude, accordingly, they are not entitled to intervene as of right under Rule 24(a) of the Federal Rules of

1

Civil Procedure. I also decline to exercise my discretion to permit their intervention under Rule 24(b). I will, however, authorize the groups to submit *amici curiae* briefs in accordance with the accompanying Standing Order.

## FACTUAL BACKGROUND

This suit has a long and tortuous history, which the Court of Appeals for the Fourth Circuit chronicled at some length in *Dow Agrosiences LLC v. National Marine Fisheries Service*, 707 F.3d 462 (4th Cir. 2013). A tighter synopsis will suffice here.

In brief, the manufacturers that brought this suit (collectively, the "Pesticide Manufacturers" or "Manufacturers")[1] are suppliers of agricultural pesticides containing chlorpyrifos, diazinon, or malathion – chemicals that, by law, cannot be distributed or sold unless the EPA has registered them. *See* 7 U.S.C. § 136a. All three chemicals were registered decades ago, Compl. ¶ 26, ECF No. 1, but a 1988 amendment to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") required the EPA to reregister them, *see* 7 U.S.C. § 136a-1(a). As this case amply demonstrates, the reregistration process can take years to complete, Compl. ¶ 14, and because the outcome may have significant implications for business interests as well as for the environment, it can be contentious. That certainly has been the case here, where, for the past 18 years, environmental groups and pesticide makers have taken turns challenging the reregistration process in court. *See generally Dow Agrosciences*, 707 F.3d at 465-66.

At the center of all this litigation is Section 7 of the Endangered Species Act, which obligates the EPA to consult other federal agencies to insure that its actions are "not likely to

---

[1] Plaintiffs are: Makhteshim Agan of North America, Inc., a North Carolina-based supplier of agricultural pesticide chemicals; FMC Corp., a Pennsylvania-based supplier of technologies for crop protection, pest control, and vegetation management; and Dow AgroSciences LLC, an Indiana-based company that supplies technologies for crop protection, pest and vegetation management, and biotechnology. Compl. ¶¶ 8-10.

2

jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [such species'] habitat." 35 U.S.C. § 1536(a)(2). To that end, a 2001 lawsuit in the Western District of Washington spurred the EPA to initiate consultations with the National Marine Fisheries Service (the "Fisheries Service") to gauge the threat chlorpyrifos, diazinon, and malathion, among other pesticide ingredients, might pose to salmonid species and their habitats. *See Dow Agrosciences*, 707 F.3d at 465. In 2008, after yet another round of litigation, the Fisheries Service detailed its findings in a report known as a "biological opinion," or "BiOp." *See* 50 C.F.R. § 402.14(g)(4). A final draft (the "2008 BiOp") concluded the three pesticide ingredients at issue here "would jeopardize numerous salmonid species and adversely affect critical habitat for them." *Dow Agrosciences*, 707 F.3d at 466. Pesticide manufacturers sued the Fisheries Service under the Administrative Procedures Act ("APA"), 5 U.S.C. § 704, alleging the scientific processes the agency employed in developing the BiOp were not sufficiently rigorous, *see Dow Agrosciences*, 707 F.3d at 466. Ultimately, the Fourth Circuit agreed, ordering the district court to remand the case to the Fisheries Service for further proceedings. *See id.* at 475.

The process that followed yielded a new BiOp (the "2017 BiOp"), which is the subject of the dispute now before the Court. Here, the Manufacturers allege the 2017 BiOp "repeats all of the errors" the Fourth Circuit identified as flaws in the 2008 version. Compl. ¶ 50. The Manufacturers seek a judgment declaring the Fisheries Service violated the APA, the Endangered Species Act, and the Fourth Circuit's order in *Dow Agrosciences* and vacating the 2017 BiOp.

Those claims continue to await resolution. For now, the Court need only concern itself with the motion to intervene, ECF No. 24, brought by four conservation or commercial fishing

organizations: the Northwest Center for Alternatives to Pesticides, the Pacific Coast Federation of Fishermen's Associations, the Institute for Fisheries Resources, and Defenders of Wildlife (collectively, the "Applicants"). These organizations, which have the stated goal of protecting salmon and steelhead from the harmful effects of pesticides, *see* Mot. to Intervene 6, ECF No. 24, have been contesting the reregistration of chlorpyrifos, diazinon, and malathion for nearly two decades. Three of them were plaintiffs in the 2001 lawsuit in the Western District of Washington that impelled the EPA to begin consultations with the Fisheries Service, *see Wash. Toxics Coal. v. EPA*, No. C01-0132C, 2002 WL 34213031 (W.D. Wash. July 2, 2002), and in a subsequent suit seeking to compel the Fisheries Service to complete its consultation, *see* Complaint, *Nw. Coal. for Alts. to Pesticides v. Nat'l Marine Fisheries Serv.*, No. 07-1791-RSL (W.D. Wash. Nov. 5, 2007), ECF No. 1. All four Applicants were plaintiffs in a 2004 suit challenging federal regulations aimed at streamlining the pesticide reregistration process. *See Wash. Toxics Coal. v. U.S. Dep't of Interior, Fish & Wildlife Serv.*, 457 F. Supp. 2d 1158 (W.D. Wash. 2006). More recently, when the Pesticide Manufacturers challenged the 2008 BiOp in *Dow Agrosciences*, the district court granted the four Applicants' unopposed motion for intervenor status. *See* August 2011 Order, *Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, No. 09-824-AW (D. Md. Aug. 23, 2011), ECF No. 68 (authorizing permissive intervention under Rule 24(b)).

Here, Applicants assert they are entitled to intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure. *See* Mot. to Intervene 8. They argue they have a substantial interest in protecting endangered salmon and steelhead from toxic pesticides and that a decision to invalidate the 2017 BiOp would frustrate their long-running efforts to protect those species. *See id.* at 11-14. They further urge the Court to find the Fisheries Service cannot adequately

represent their interest, explaining that "[t]he federal government has demonstrated a long-standing reluctance to adequately protect salmon and steelhead from pesticides." *Id.* at 15. Applicants' fallback position, should the Court decline to grant the intervention under Rule 24(a), is that they ought to at least enjoy the benefits of permissive intervention under Rule 24(b). *See id.* at 16-17.

The Fisheries Service took no position on the Applicants' motion. The Manufacturers, though, opposed it. Their response in opposition argues, first, that Applicants cannot have a "significantly protectable interest" in defending a BiOp that did not comply with statutory requirements, *see* Resp. in Opp'n 5-6, ECF No. 36, and, second, that a decision to vacate the BiOp would merely preserve the status quo, *see id.* at 7. The Manufacturers go on to argue that the government, with its unmatched "expertise and familiarity with the issues," is best positioned to defend a suit over alleged defects in its own administrative proceedings. *Id.* at 8-9. They ask the Court to note that the Fisheries Service "already has demonstrated an interest in vigorously opposing" the suit, as evidenced by the agency's opposition to the Manufacturers' request to file a preliminary dispositive motion on procedural grounds. *See id.* at 10-11 (citing Defs.' Meet & Confer Statement 4-5, ECF No. 31).

All issues concerning the motion to intervene have been briefed in full. *See* ECF Nos. 24, 36, 40. No hearing is necessary. *See* Loc. R. 105.6.

## DISCUSSION

Applicants seek to enter this litigation as intervenor-defendants in either of the following ways: (1) intervention as of right, under Rule 24(a); or (2) permissive intervention, under Rule 24(b). They have not expressly requested the opportunity, in the alternative, to submit briefs as *amici curiae*, though I note that this, too, is a way third parties may make known their views

concerning issues of interest that relate to pending litigation. I will address each of these three options below.

### Intervention as of Right

The requirements for intervention as of right are spelled out in Rule 24(a) of the Federal Rules of Civil Procedure.[2] Under this provision, a third party who submits a timely motion to intervene is entitled to intervenor status if he or she "can demonstrate '(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicants' interest is not adequately represented by existing parties to the litigation.'" *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (quoting *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991)). Here, the Manufacturers do not dispute Applicants' motion was timely.[3] Their contention, rather, is that the Applicants have not satisfied any of the other three requirements under Rule 24(a).

I will assume, without deciding, that Applicants have satisfied the first two elements. I choose to focus, instead, on the third element – that is, whether the government is an adequate representative of Applicants' interest.

---

[2] Rule 24(a)(2), which applies here, provides:

> On a timely motion, the court must permit anyone to intervene who:
> 
> ...
> 
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

[3] "The determination of timeliness is committed to the sound discretion of the trial court . . . ." *Alt v. U.S. Envtl. Prot. Agency*, 758 F.3d 588, 591 (4th Cir. 2014). Here, the Manufacturers initiated this suit on April 4, 2018, and the Applicants moved to intervene about seven weeks later, on May 24, 2018. I am satisfied the motion was timely.

The Pesticide Manufacturers rightly note that, when it comes to this element, Rule 24(a) is more demanding of some movants than others. In *Stuart v. Huff*, the Fourth Circuit clarified that, for most would-be intervenors, a relatively "modest showing of inadequacy" ought to suffice. 706 F.3d at 352. If, however, a movant shares its objective with a governmental party, "a more exacting showing of inadequacy" is necessary.[4] *Id.* at 351. This is because the government "is simply the most natural party to shoulder the responsibility of defending the fruits of the democratic process." *Id.*

While, ultimately, it is the "province" of the trial court to assess whether the movant has met its burden, *see id.* at 350 (quoting *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006)), *Stuart* offers a framework to structure the court's analysis. There, the district court first assessed whether the would-be intervenor and the government shared the "same ultimate objective." *Id.* at 349. If so, the court stated, "a presumption arises that [the applicant's] interests are adequately represented." *Id.* To rebut this presumption, the applicant would have to show the government's representation was compromised by "adversity of interest, collusion, or nonfeasance." *Id.* The Fourth Circuit held this approach was not an abuse of discretion. *Id.* at 347.

Employing the *Stuart* approach here, I first ask whether Applicants and the Fisheries Service share the "same ultimate objective." *Id.* at 349. Applicants concede their interests "may converge in some respects." Reply 6. However, they argue it "remains to be seen" whether they share the same ultimate objective because "it is not at all clear what legal theories [the Fisheries Service] will advance in this case, and to what extent those legal theories will be adverse to Applicants' interests." *Id.* at 5-6.

---

[4] Applicants' memorandum in support of its motion to intervene makes no mention of *Stuart* and asserts, incorrectly, that the "burden of proving the inadequacy of the current representation is 'minimal.'" Mot. to Intervene 15 (quoting *Teague*, 931 F.2d at 262). Their reply acknowledges that *Stuart* is controlling. *See* Reply 6, ECF No. 40.

Applicants confuse the issue. The presumption of adequate representation does not depend on legal theories or tactics. The question, simply put, is whether the would-be intervenor and governmental party seek the same outcome in the litigation. *See Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, No. ELH-16-1015, 2017 WL 2778820, at *11 (D. Md. June 26, 2017) (applying the presumption because the movants and government "seek the same result: to uphold and defend the challenged regulations"); *Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 29 (S.D.W.V. 2015) (applying the presumption in an administrative review action because the would-be intervenor, a trade group, shared the EPA's ultimate objective, in that "both aim[ed] to have this Court affirm" a decision of the EPA); *see also Farm Labor Org. Comm. v. Stein*, No. 17-1037, 2018 WL 3999638, at *21 (M.D.N.C. Aug. 21, 2018) (observing that the movants and government officials in that case shared the goal of obtaining a judgment sustaining the challenged statute). Here, they do. The Fisheries Service seeks to defeat the Manufacturers' legal challenge and prevent the invalidation of the 2017 BiOp. *See* Answer 20-21, ECF No. 37. Applicants seek the same result.

Having established that Applicants and the Fisheries Service share the same ultimate objective, I must now assess whether Applicants have rebutted the presumption of adequate representation. *See Stuart*, 706 F.3d at 349. To clear this hurdle, they must demonstrate that they have "identifiable adverse interests with the existing government party; the existing parties have engaged in collusion; or the government has committed nonfeasance." *Ohio Valley Envtl.*, 313 F.R.D. at 29.

Applicants note that they and the Fisheries Service have opposed each other in prior litigation involving the reregistration of various pesticide ingredients, including chlorpyrifos, diazinon, and malathion. Past adversity, though, is not necessarily indicative of present

8

adversity. In those earlier suits, which are now upwards of a decade old, Applicants sought to compel the Fisheries Service to complete its consultations with the EPA, *see* Complaint, *Nw. Coal.*, No. 07-1791-RSL, ECF No. 1, and to challenge regulations governing those consultations, *see Wash. Toxics Coal.*, 457 F. Supp. 2d 1158. Consultations have now taken place, and the Fisheries Service has issued two biological opinions. While the agency might, at one point, have had an incentive to resist Applicants' calls to complete its consultations with the EPA, that incentive has long since abated. If anything, the agency now has ample reason to defend its work,[5] which is exactly what Applicants want them to do.

Applicants next argue that governmental agencies like the Fisheries Service, with their "broad mandates" to serve the public good, "often cannot adequately represent the more focused interests" of special-interest groups. Reply 6 (citing *In re Sierra*, 945 F.2d 776, 780 (4th Cir. 1991)). This, however, is precisely the opposite of what the Fourth Circuit's explained in *Stuart*, when it reasoned:

> [S]tronger, more specific interests do not adverse interests make— and they surely cannot be enough to establish inadequacy of representation since would-be intervenors will nearly always have intense desires that are more particular than the state's (or else why seek party status at all). Allowing such interests to rebut the presumption of adequacy would simply open the door to a complicating host of intervening parties with hardly a corresponding benefit.

706 F.3d at 353; *see also James City Cty., Va. v. U.S. Envtl. Prot. Agency*, 131 F.R.D. 472, 474 (1990).

---

[5] The Motion to Intervene notes the EPA announced earlier this year it would reinitiate informal consultation on the 2017 BiOp. *See* Chlorpyrifos, Diazinon, and Malathion Notice, 83 Fed. Reg. 12,754-01 (Mar. 23, 2018). I do not see this fact as relevant, as the EPA is not a party to this case.

9

Applicants emphasize that this suit is still in its early stages, which has necessarily limited their opportunity to assess just how zealously the Fisheries Service will defend its position. But this is often the case with Rule 24 motions to intervene, which, after all, are subject to timeliness requirements. *See* Fed. R. Civ. P. 24(a), (b). Here, at least, one can see that the agency has answered the Manufacturers' Complaint, has asserted several affirmative defenses, has expressly denied that the Manufacturers are entitled to any relief, and has urged the Court to dismiss the action with prejudice. Answer 20-21, ECF No. 37. The agency also opposed the Manufacturers' request to bifurcate the issues. *See* Defs.' Meet & Confer Statement 4-5. Applicants' have not identified any signs of half-heartedness in the Fisheries Service's defense of this suit,[6] let alone any signs of nonfeasance or collusion. To suggest, as the Applicants do, that the agency "may enter a settlement that allows for less effective protections than those required by the BiOp or may not present a vigorous defense to [the Manufacturers'] claims" is to indulge in speculation. Mot. to Intervene 15-16. Applicants must present a good deal more than this to rebut the presumption of adequacy. *See Outdoor Amusement*, 2017 WL 2778820, at *12 ("Movants' speculative concern that the Trump administration will not vigorously defend the contested regulations does not justify intervention."); *Ohio Valley Envtl.*, 313 F.R.D. at 29.

---

[6] Applicants urge the Court to take note of the Fisheries Service's December 29, 2017 statement announcing the issuance of the 2017 BiOp. *See* Biological Opinion for Pesticides: Chlorpyrifos, Diazinon, and Malathion, NOAA Fisheries (Dec. 29, 2017), https://www.fisheries.noaa.gov/resource/document/biological-opinion-pesticides-chlorpyrifos-diazinon-and-malathion. There, the agency noted that a federal court had rejected its request for an extension of time to complete the BiOp. *Id.* The agency said the court's decision forced it to release a product that, "given the time, cannot fully account for the need to coordinate on a different process for developing such opinions or to fully engage the public." *Id.* Granted, this statement may undermine the agency's position in this litigation; the Manufacturers seem to think so, because they noted it in their Complaint. Compl. ¶ 49. Certainly, though, a party's adverse statements prior to the commencement of litigation do not signal the party is resigned to concede defeat in the suit.

The burden of rebutting the presumption of adequacy rests with the Applicants. That burden has not been met. For this reason, I find the Applicants are not entitled to intervention as of right under Rule 24(a).

**Permissive Intervention**

Applicants ask the Court, in the alternative, to permit their intervention under Rule 24(b). Under this provision, a court may, in its discretion, allow a third party to intervene in a case if he or she "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The provision requires the court, in the course of its analysis, to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Adding parties to a case cannot help but complicate the proceedings. It is all but certain, too, to result in some delay. This alone, though, "does not mean that intervention should be denied." *Ohio Valley Envtl.*, 313 F.R.D. at 30. The question Rule 23(b)(3) instructs courts to answer is whether the ensuing delay would be "undue." Fed. R. Civ. P. 24(b)(3). In making this assessment, "the court must balance the delay threatened by intervention against the advantages promised by it." *Ohio Valley Envtl.*, 313 F.R.D. at 30; *see Va. Uranium, Inc. v. McAuliffe*, No. 4:15-cv-00031, 2015 WL 6143105, at *4 (W.D. Va. Oct. 19, 2015).

I have already explained that the Fisheries Service is an adequate representative of Applicants' interest. This conclusion, while not decisive, militates against permissive intervention, *see Va. Uranium*, 2015 WL 6143105, at *4 ("Where 'intervention as of right is decided based on the government's adequate representation, the case for permissive intervention diminishes or disappears entirely." (quoting *Tutein v. Daley*, 43 F. Supp. 2d 113, 131 (D. Mass. 1999))), because it suggests the opportunities for the would-be intervenor to make meaningful

contributions to the case are likely to be limited. The benefits of intervention would seem especially slight in cases like this one, where judgment is likely to hinge on a review of the administrative record. *See James City Cty.*, 131 F.R.D. at 475; Peter A. Appel, Intervention in Public Law Litigation: The Environmental Paradigm, 78 Wash. U. L.Q. 215, 281-82 (2000) ("If the liability phase is limited to the administrative record, it is difficult to see how an outsider helps the court and the original litigants sift through that record.").

In the end, "[t]he decision to grant or deny permissive intervention 'lies within the sound discretion of the trial court.'" *Md. Restorative Justice Initiative v. Hogan*, 316 F.R.D. 106, 112 (D. Md. 2016) (quoting *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003)). It is my view that, under the circumstances of this particular case, Applicants' intervention is unwarranted. Their request for permissive intervention under Rule 24(b) is denied.

### *Amicus Curiae* Status

As the Fourth Circuit noted in *Stuart*, the denial of a motion to intervene "does not leave [the movant] without recourse." 706 F.3d at 355. In appropriate cases, a court may authorize a non-party to submit an *amicus curiae* brief, providing the non-party an opportunity to weigh in on the legal issues presented in a case. *See Outdoor Amusement*, 2017 WL 2778820, at *13; Ohio Valley Envtl.*, 313 F.R.D. at 32. Here, it is abundantly clear that Applicants are knowledgeable about the history and import of the Fisheries Service's role in the pesticide reregistration process. Their legal analysis would be both welcome and appreciated. I choose, therefore, to grant Applicants *amici curiae* status in this action. Applicants will not be required to seek leave of the Court but must otherwise comply with the accompanying Standing Order regarding *Amicus* Briefs.

## CONCLUSION

Applicants have not demonstrated the Fisheries Service cannot adequately represent their interests in the case, nor have they persuaded me that the benefits of their participation as a party in this case would outweigh the complications and delay that would be sure to follow. For these reasons, their motion to intervene, ECF No. 24, IS DENIED. However, the Court GRANTS Applicants *amici curiae* status and will accept briefs consistent with the accompanying Standing Order regarding *Amicus* Briefs.

A separate Order follows.

Date: November 8, 2018

_____
Paul W. Grimm
United States District Judge